IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GLORIA HIBDON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:24-CV-1908-D |
| | § | |
| ATRIUM HOSPITALITY LP D/B/A | § | |
| HAMPTON INN & SUITES DALLAS- | § | |
| MESQUITE, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action, plaintiff Gloria Hibdon ("Hibdon") alleges that defendants Atrium Hospitality LP ("Atrium") d/b/a Hampton Inn & Suites Dallas-Mesquite, and John Q. Hammons Hotels, Inc. (collectively "defendants," unless the context indicates otherwise) are liable on negligence and premises liability claims for injuries she suffered when she tripped on a metal doorstop outside a hotel managed by Atrium. Hibdon moves for leave to extend the discovery deadline for the limited purpose of conducting depositions, and to exclude the testimony of Atrium's designated expert, Brian Hayes ("Hayes"). Defendants move for summary judgment.[1] For the reasons that follow, the court grants Hibdon's motion for leave to extend the discovery deadline, denies without prejudice as premature Hibdon's

_____

[1] Atrium admits that it is the managing entity for the Hampton Inn & Suites location where Hibdon was injured, and it maintains that John Q. Hammons Hotels, Inc. is not a legal entity. Nevertheless, although Atrium individually responded to Hibdon's two instant motions, defendants collectively filed the instant summary judgment motion.

motion to exclude Hayes's testimony, and grants in part and denies in part defendants' motion for summary judgment. The court *sua sponte* also resets the trial of this case to the two-week docket of April 6, 2026.

I

In August 2022 Hibdon visited the convention center at Atrium's hotel to attend a meeting.[2] This was the first time she had been to the hotel. As Hibdon approached one of the convention center's entrances to hold the door open for a colleague, she tripped and fell on a metal doorstop fastened to the concrete floor and sustained injuries. Prior to her fall, Hibdon entered the convention center through a different set of doors and exited through the same set of doors where she later fell. At neither point did she see a doorstop.

Hibdon sued defendants in state court, alleging claims for negligence and premises liability. Atrium removed the case to this court based on diversity of citizenship. The court issued a scheduling order that required the parties to designate expert witnesses, and otherwise comply with Fed. R. Civ. P. 26(a)(2), by July 11, 2025. On July 22, however, Atrium moved for a 14-day extension to serve its expert reports, which the court granted. One day prior to the close of discovery, Hibdon requested to depose Atrium's corporate representatives. Atrium refused this request, citing the close of discovery.

Hibdon now moves for leave to extend the discovery deadline for 30 days for the sole

---

[2]In recounting the factual background, the court summarizes the evidence in the light most favorable to Hibdon as the nonmovant and draws all reasonable inferences in her favor. *See Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.).

purpose of deposing Atrium's expert witnesses and corporate representatives. She also moves to exclude the testimony of Atrium's expert (Hayes) under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Atrium opposes these motions. Defendants move for summary judgment. The court is deciding the motions on the briefs, without oral argument.

II

The court considers first Hibdon's motion for leave to extend the discovery deadline for the sole purpose of deposing Atrium's expert witnesses and corporate representatives.

A

Rule 16(b)(4) governs a party's request to modify a scheduling order. *Cartier v. Egana of Switz. (Am.) Corp.*, 2009 WL 614820, at *2 (N.D. Tex. Mar. 11, 2009) (Fitzwater, C.J.). "To modify the scheduling order, a party must demonstrate good cause and obtain the judge's consent." *Rodrigues v. US Bank Nat'l Ass'n*, 2021 WL 2077650, at *1 (N.D. Tex. May 24, 2021) (Fitzwater, J.). The good cause standard "require[s] the movant 'to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Puig v. Citibank, N.A.*, 514 Fed. Appx. 483, 487-88 (5th Cir. 2013) (per curiam) (quoting *S & W Enters., LLC v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)).

In determining whether the movant has met her burden under Rule 16(b)(4), the court considers four factors: "(1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the modification; (3) potential prejudice in allowing

the modification; and (4) the availability of a continuance to cure such prejudice." *Squyres v. Heico Cos.*, 782 F.3d 224, 237 (5th Cir. 2015) (cleaned up). The court considers the four factors holistically and "does not mechanically count the number of factors that favor each side." *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012).

B

Hibdon contends that, due to Atrium's delayed service of the expert reports, she did not have a reasonable opportunity to review the reports or conduct depositions of Atrium's expert witnesses or corporate representatives before the close of discovery. Atrium responds that Hibdon had more than one month between the service of the reports and the discovery deadline, but she waited until the penultimate day of discovery to request a deposition of Atrium's corporate representatives and never formally requested to depose Atrium's experts.

C

The court concludes that Hibdon has shown good cause. Hibdon made a reasonably diligent effort to comply with the scheduling order by requesting a deposition before the close of discovery. The inconvenient timing of her request was the result of Atrium's untimely service of the expert reports. Moreover, Hibdon has demonstrated the importance of the scheduling order modification: she would like to depose Atrium's experts to determine the scope, methodology, and bases for their opinions.

Atrium does not contend that it will be prejudiced by the requested modification. To the contrary, in moving for leave to serve the expert reports after the court-ordered deadline,

Atrium acknowledged that "[t]he Court may also afford [Hibdon] any extension as it deems appropriate which could cure any prejudice caused by a 14-day extension of the Deadline." D. Br. (ECF No. 20) at 4.

Accordingly, the court in its discretion grants Hibdon's motion to extend the discovery deadline for 60 days[3] from the date of this memorandum opinion and order for the sole purpose of deposing Atrium's expert witnesses and corporate representatives.

### III

The court turns next to Hibdon's motion to exclude Hayes's testimony.

The court typically considers *Daubert* challenges after the expert's deposition has been taken. *See Klein v. Fed. Ins. Co.*, 2014 WL 6885973, at *1 (N.D. Tex. Dec. 8, 2014) (Fitzwater, J.). Having granted Hibdon leave to depose Hayes, the court denies Hibdon's motion to exclude Hayes's testimony, without prejudice, as premature.

### IV

Finally, the court considers defendants' motion for summary judgment.[4]

---

[3]Due to the forthcoming holiday periods in late November and December and the availability of a trial continuance, it would be unduly burdensome to set a shorter deadline and preferable to reset the trial date, which the court does below.

[4]Hibdon does not invoke Rule 56(d) or otherwise request that the court defer consideration of defendants' summary judgment motion. Moreover, any additional deposition testimony that Hibdon develops during the extended discovery period would not affect the court's conclusion with respect to defendants' motion. Therefore, the court sees no reason to delay consideration of defendants' summary judgment motion.

A

When a party moves for summary judgment on a claim on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovant must go beyond her pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the nonmovant fails to meet her burden. *Little*, 37 F.3d at 1076.

B

The court turns first to Hibdon's negligence claims. Defendants are correct that Hibdon's negligence claims fail as a matter of law and that she must recover, if at all, under a premises liability theory. *See Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992). A plaintiff injured on another's property "cannot pursue *both* a negligent activity and a premises defect theory of recovery based on the same injury." *Austin v. Kroger Tex. L.P.*, 746 F.3d 191, 197 (5th Cir. 2014) (emphasis in original). "Recovery on a negligent activity

theory requires that the person have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity." *Keetch*, 845 S.W.2d at 264.

Hibdon alleges that she was injured by a condition of the property (the doorstop) rather than contemporaneous negligent activity.[5] Thus she is confined to a premises liability theory. *See id.* ("Keetch may have been injured by a condition created by the spraying but she was not injured by the activity of spraying."); *Austin*, 746 F.3d at 196-97 (applying *Keetch*). Hibdon appears to recognize this. In response to defendants' summary judgment motion, she neither asserts that she can recover for negligence nor disputes that she is confined to a premises liability claim. Instead, she contends only that defendants have failed to show that summary judgment is proper with respect to her premises liability cause of action. *See Gonzales v. Home Depot USA, Inc.*, 2022 WL 1102862, at *4 n.5 (N.D. Tex. Apr. 13, 2022) (Fitzwater, J.) (granting summary judgment on a negligence claim in similar circumstances).

The court therefore grants defendants' summary judgment motion insofar as it seeks dismissal of Hibdon's negligence claims.

---

[5]Most of Hibdon's allegations concerning negligence relate to defendants' alleged nonfeasance and therefore fall within her premises liability claims. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010) ("We have recognized that negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." (footnote omitted)). To the extent that Hibdon alleges negligence based on affirmative conduct, such as hiring, she has not presented evidence to support that she was injured as a result of contemporaneous conduct attributable to defendants. *See Keetch*, 845 S.W.2d at 264.

C

The court turns next to Hibdon's premises liability claims.

1

To prevail on a premises liability claim against a property owner, an injured invitee must establish that:

> (1) the property owner had actual or constructive knowledge of the condition causing the injury; (2) the condition posed an unreasonable risk of harm; (3) the property owner failed to take reasonable care to reduce or eliminate the risk; and (4) the property owner's failure to use reasonable care to reduce or eliminate the risk was the proximate cause of injuries to the invitee.

*Henkel v. Norman*, 441 S.W.3d 249, 251-52 (Tex. 2014) (per curiam). Defendants maintain that (i) the doorstop is a common condition and therefore did not pose an unreasonable risk of harm as a matter of law; and (ii) they did not owe a duty to make safe or warn Hibdon of the doorstop because it was an open and obvious condition.[6]

2

Defendants contend first that the doorstop over which Hibdon tripped is a common condition and therefore is not unreasonably dangerous as a matter of law. The court disagrees.

---

[6] Defendants also assert generally that Hibdon cannot support the elements of her premises liability claim. But they have failed to sufficiently develop any argument that Hibdon failed to adduce evidence that creates a genuine issue of material fact with respect to any element of her premises liability claim besides those that the court addresses in this memorandum opinion. *See Hearn v. Kroger Texas, L.P.*, 2022 WL 2533408, at *3 (N.D. Tex. July 7, 2022) (Fitzwater, J.) (denying summary judgment in similar circumstances).

"A condition creates an unreasonable risk of harm if there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Christ v. Tex. Dep't of Transp.*, 664 S.W.3d 82, 87 (Tex. 2023), *reh'g den'd* (May 5, 2023) (citation and internal quotation marks omitted). Although the question whether a condition is unreasonably dangerous is ordinarily a fact question, the Supreme Court of Texas has held that certain innocuous or commonplace hazards are not unreasonably dangerous as a matter of law. *See id.* (collecting cases). In so concluding, the Supreme Court of Texas has considered "whether the relevant condition was clearly marked, its size, whether it had previously caused injuries or generated complaints, whether it substantially differed from conditions in the same class of objects, . . . whether it was naturally occurring[,] . . . [and] [w]hether the condition met applicable safety standards." *Id.* (final alteration in original) (citations and internal quotation marks omitted).

Here, whether the doorstop in question posed an unreasonable risk of harm is a fact question that the court cannot resolve at the summary judgment stage. On the one hand, Hibdon has not presented evidence of prior accidents or injuries related to the doorstops located outside the convention center. But, on the other hand, Hibdon has introduced evidence that the doorstop was small, not clearly marked, and difficult to detect. She testified that the doorstop was of similar size and color to discolorations in the surrounding concrete. And she has presented expert testimony that the inspected doorstop was 1.8 to 2 inches in width and excessively protruded above the floor surface, in violation of applicable

safety codes.[7] The court therefore concludes that Hibdon has presented sufficient evidence to enable a reasonable jury to find that the doorstop in question posed an unreasonably dangerous risk of harm.

The court is not persuaded that *United Supermarkets, LLC v. McIntire*, 646 S.W.3d 800, 801 (Tex. 2022)—a case about an approximately ¾ inch divot in a grocery store parking lot—compels the court to grant summary judgment. The Supreme Court of Texas' holding in *McIntire* is limited to the specific pavement defect at issue. *Id.* at 805 ("[W]e make no broad pronouncements on whether pavement defects constitute unreasonably dangerous conditions, and we do not opine on whether another larger or differentially situated defect could pose an unreasonable risk of harm."). And unlike in *McIntire*, the undisputed material facts in this case do not demonstrate that the doorstop in question was so ordinary that Hibdon's proffered expert testimony is irrelevant. *See id.* at 804. Defendants' supporting brief cites only two pieces of record evidence—the hotel manager's affidavit and photographs of the doorstop—neither of which conclusively establishes that the doorstop could not have posed an unreasonable risk of harm. Moreover, Hibdon has presented evidence that the safety codes at issue apply to buildings in the city of Mesquite, and they are therefore relevant to the court's analysis. *See id.* ("[W]hile applicable safety codes may be relevant to assessing whether a condition poses an unreasonable risk of harm, McIntire failed

---

[7]Because the doorstop over which Hibdon tripped had already been removed by the time Hibdon's expert conducted his investigation, he examined doorstops of similar design at other entrances of the hotel.

to submit evidence showing that the safety codes referenced in the expert report applied to the Market Street parking lot . . . ." (emphasis omitted)).

Accordingly, the court declines to grant summary judgment on the basis that the doorstop over which Hibdon tripped was not unreasonably dangerous as a matter of law.

3

Defendants also maintain that summary judgment is proper because the doorstop was open and obvious. The court again disagrees.

"When [a] danger is open and obvious, [a] property owner generally has no obligation to warn of the danger or make the premises safe, as a matter of law." *Los Compadres Pescadores, L.L.C. v. Valdez*, 622 S.W.3d 771, 788 (Tex. 2021). A property owner may also have no duty to warn or make safe if the invitee had subjective knowledge of the danger. *Id.* at 788 n.13.

Hibdon has presented sufficient evidence to preclude summary judgment. She testified that she had entered the building through different doors than those next to which she had tripped; that she had not seen a doorstop at any point prior to her fall; and that the doorstop resembled discolorations in the concrete. Moreover, Hibdon's proffered expert report suggests that someone in her position would not have been able to see the doorstop as she was exiting the hotel because the open leaf of the door blocked the doorstop from view. Viewing the evidence in the light most favorable to Hibdon and drawing all reasonable inferences in her favor, the court concludes that there is a genuine issue of material fact regarding whether the doorstop was an open and obvious condition.

Accordingly, the court denies defendants' summary judgment motion with respect to Hibdon's premises liability claims.

V

In light of the additional time granted to complete discovery, and the intervening holiday periods, it is unrealistic to expect the parties to be ready for trial at the current setting. Accordingly, the court *sua sponte* continues the trial to the two-week jury docket of April 6, 2026. Because the court is resetting this case on its own initiative without determining whether counsel, their clients, or their witnesses have material conflicts—e.g., conflicting settings in cases that are likely to be tried and prepaid vacations—counsel should alert the court to such conflicts before seeking continuances in other cases, canceling vacations, or instructing clients and witnesses to do so. The court may be able to accommodate such conflicts, if given sufficient notice.

N.D. Tex. Civ. R. 40.1 provides, "Unless the presiding judge orders otherwise, the granting of a motion for continuance will not extend or revive any deadline that has already expired in a case." Therefore, any relief from an expired deadline must be obtained by motion or agreed order (subject to court approval). Unexpired deadlines based on the prior trial setting, however, are hereby reset so that the parties shall now comply with them on the basis of the new setting.

\* \* \*

For the reasons explained, the court grants Hibdon's motion for leave to extend the discovery deadline for 60 days from the date of this memorandum opinion and order for the

- 12 -

sole purpose of deposing Atrium's experts and corporate representatives; denies without prejudice as premature Hibdon's motion to exclude Hayes's testimony; and grants in part and denies in part defendants' motion for summary judgment.

**SO ORDERED**.

November 19, 2025.

                                                SIDNEY A. FITZWATER
                                                SENIOR JUDGE